UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LINDA L. BALL,

                              Plaintiff,              12-CV-303(MAT)

              v.                                      **DECISION
                                                     and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                              Defendant.
_____

### INTRODUCTION

Plaintiff Linda L. Ball ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##8, 12.

_____

[1] Carolyn M. Colvin is automatically substituted for the previously named Defendant Michael Astrue pursuant to Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend the caption accordingly.

**BACKGROUND**

On April 8, 1996, Plaintiff filed applications for SSI and DIB alleging disability beginning on January 2, 1996. T. 106-18.[2] Her claim was denied initially, and then on reconsideration. T. 78-9. A hearing was held on January 13, 1998, after which an unfavorable decision was issued dated October 27, 1998. A request for review was filed with the Appeals Council, which was denied on January 22, 2002. A civil action in this Court was filed on February 4, 2002 (02-CV-097JTE). T. 248-300. Former District Judge John T. Elfvin reversed the decision of the Commissioner and remanded the matter for further proceedings on the basis that determination of the Administrative Law Judge ("ALJ") was not supported by substantial evidence. T. 296-300. The Court directed that further consideration be made of the impact of Plaintiff's nonexertional limitations. T. 300.

Upon remand, Plaintiff appeared and testified at two hearings dated October 10, and November 16, 2007. T. 890-928, 929-49. Plaintiff's applications were amended to allege a closed period of disability from January 1, 1996, to June 20, 2000. T. 895-96. ALJ Nancy Lee Gregg issued a decision dated December 11, 2008, finding that Plaintiff was not disabled. T. 227-46.

---

[2] Numerals preceded by "T." refer to pages from the transcript of the administrative record, submitted by Commissioner as a separately bound exhibit in this proceeding.

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the SSA, see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found that Plaintiff had not engaged in substantial gainful activity from January 2, 1996, through June 20, 2000, the day Plaintiff returned to work. T. 232. Plaintiff had the following severe impairments: hypothyroidism, gastroesophagel reflux disease ("GERD"), sliding hiatal hernia, hypertension, some degree of myofascial pain, vitamin B-12 deficiency, headaches, sinusitis, and depression. T. 233. At step three, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of the Listings set forth at 20 C.F.R. Pt. 404, Subpart P, Appendix 1. T. 23-24. Because Plaintiff could not be found disabled at the third step, the ALJ proceeded to determine that Plaintiff retained the residual functional capacity ("RFC") to lift, carry, push, and pull up to 20 pounds occassionally and 10 pounds frequently; sit for 2 hours at a time and 8 hours total with normal breaks; and stand/walk for about 6 hours total with normal breaks in an 8-hour workday. T. 235. She further found that Plaintiff should avoid climbing ladders or scaffolds and working at unprotected heights; and avoid prolonged concentrated exposure to pollens, excessive dust, fumes, odors, gases. Id. Plaintiff was unable to perform her past relevant work as a licensed practical nurse ("LPN") because the requirements

of that job exceeded her RFC. T. 242-43. Relying on the Medical-Vocational Guidelines and the testimony of a Vocational Expert ("VE"), the ALJ found that Plaintiff could perform work in the national economy, and concluded that Plaintiff was not disabled. T. 243-46.[3]

Plaintiff filed Exceptions to the ALJ's Unfavorable Decision with the Appeals Council on January 13, 2009. T. 221-23. Three years later, by notice dated February 14, 2012, the Appeals Council declined jurisdiction. Dkt. #1, Ex. B. Plaintiff then commenced the instant civil action. Dkt. #1.

In the present motion, Plaintiff alleges that the decision of the ALJ is erroneous and not supported by substantial evidence on the grounds that: (1) The ALJ erred when she found Plaintiff's alleged cognitive disorder to be a non-severe impairment; (2) Plaintiff's mental RFC finding is not supported by substantial evidence; (3) the ALJ applied the improper standard in assessing Plaintiff's credibility; and (4) the VE testimony did not provide substantial evidence to support the denial of benefits. Pl. Mem. (Dkt. #8-1) 8-16. The Commissioner cross-moves for judgment on the pleadings on grounds that the ALJ's decision is correct and is supported by substantial evidence. Comm'r Mem. (Dkt. #13) 17-25.

---

[3] For purposes of the Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998).

For the following reasons, Plaintiff's motion is denied, and the Commissioner's cross-motion is granted.

## **DISCUSSION**

### I.   **General Legal Principles**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel,

174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II.  **Medical Evidence**

A consultative organicity evaluation was administered by David S. Donofrio, Ph.D., on August 13, 1996, during which Plaintiff reported issues with memory and confusion that had been linked to Epstein-Barr virus and chronic fatigue syndrome. T. 199-204. She further reported that during her job as an LPN, she began making

mistakes at the hospital, falling asleep, not making nursing notes, and administering the wrong medication to patients. T. 200. Dr. Donofrio noted regression in Plaintiff's verbal ability, confusion, and loss of focus and concentration during testing. T. 201-03. Plaintiff could not sustain effort consistently with regard to her cogitative functioning, and she had become somewhat dependant on family and friends. T. 203. Nonetheless, Plaintiff could still take care of her children, do most chores, and perform self-care. Id. Dr. Donofrio concluded that Plaintiff "could be diagnosed with a cognitive disorder, not otherwise specified," and that he could not confirm Epstein-Barr, chronic fatigue, or other medical issues, but that he could see a cognitive deterioration in Plaintiff's verbal ability. T. 203.

State Agency psychiatrist Kelly Chun, M.D., reviewed the record, including Dr. Donofrio's report, and completed a Psychiatric Review Technique form. T. 146-58, 212. Therein, Dr. Chun noted Plaintiff's history of chronic fatigue and fibromyalgia, and opined that she had slight restrictions in activities of daily living and social functioning, no episodes of decompensation, and often had deficiencies of concentration, persistence, or pace. T. 153.

Plaintiff underwent a consultative examination by Arun Patel, M.D. on October 9, 1996. T. 205-08. She reported good health until February, 1995, when she began experience cold and flu-like

symptoms. T. 205. Hip and back pain followed, as well as fatigue, numbness in the left side of her face, arms, and legs, ongoing sore throat, persistent nausea, vomiting, and diarrhea, stiffness, muscle spasms in her back, weakness/numbness in her legs, and recurrent headaches over the course of a year and a half. T. 206. Dr. Patel could not determine any specific disorder to explain Plaintiff's symptoms. T. 208.

Treatment records from the offices of Patrick Collins, M.D., and Michael Murray, M.D., dates November 25, 1996 indicate that Plaintiff reported persistent fatigue for the past year. T. 459. Those notes indicate that Plaintiff sought a second opinion from Dr. Wilkinson,[4] who told her she had immune deficiency, chronic fatigue, and fibromyalgia, and prescribed B-12 injections, supplements, Paxil, Robaxin, and Synthroid. Id. Plaintiff stated that she took frequent names and sometimes slept up to 12 hours at a time. Id. She had been unable to work due to difficulties concentrating and forgetfulness at her job. Id.

The following year, Plaintiff commenced treatment with Joseph A. DiChiara, M.D.[5] She reported a history of fibromyalgia, GERD, Epstein-Barr, chronic fatigue, sinusitis, and hypothyroidism. T. 217. Treatment notes indicate that Plaintiff exhibited no tender

---

[4] As of the date of Plaintiff's first supplemental hearing, Dr. Wilkinson had lost his license to practice medicine. T. 923.

[5] Dr. DiChiara surrendered his medical license on October 9, 1998. T. 866-76.

points that elicited pain during testing, no diminished strength, and fairly good blood pressure. Id. Dr. DiChiara recommended additional testing and requested Plaintiff's past medical records in order to determine future treatment. Id.[6]

In 1999, Plaintiff again sought treatment with Drs. Collins and Murray. On January 12, Plaintiff's assessment was dysphagia, hair loss after pregnancy, hypothyroidism, reflux, and eczema. T. 457.  Progress records from January 1999 to June 2000 indicate many of the same complaints previously noted and an assessment of sinusitus, migraine headaches, fibromyalgia, hypothyroid, probable depression symptoms, and GERD. T. 883-85.

Treatment notes from August, 2000, by Yan Liu, M.D., indicate fatigue associated with weight loss, migraines, and depression. T. 766-70.

### III. **Non-Medical Evidence**

Plaintiff was born in 1961 and was 10 weeks pregnant at the time of her hearing in January, 1998. T. 43. She lived at home with her husband and two minor children. T. 44. Plaintiff worked as an LPN, and as such, she stood for most of the day and was required to carry 50 pounds or more at a time. T. 124. She claimed she could no longer work due to Epstein-Barr, fibromyalgia, chronic fatigue,

---

[6] Plaintiff testified that despite going to his office twice, Dr. DiChiara never examined her and his report was "made up." T. 241. The ALJ noted this, and the physician's medical license revocation in her written decision. Id.

headaches, joint pain, high blood pressure, a hiatal hernia, periods of excessive sleep, and inability to concentrate. T. 47-50, 55-58, 115-16. Her last day of work was January 2 or 3, 1996. T. 45.

Plaintiff stated that she slept often, took care of her personal needs, but did the minimum with regard to household chores and duties. T. 53-54, 118, 134. She was able to stand for 10 minutes, walk for a couple of blocks, and sit for 50 minutes, and could lift about 10-15 pounds. T. 58-60. Plaintiff testified that her medications had no side effects. T. 61. Although she sought mental health treatment for an initial evaluation, she did not receive ongoing treatment, and took an anti-depressant for about 6 weeks. T. 68.

Plaintiff's husband testified that he had known Plaintiff for 2 years, that she was constantly fatigued and forgetful, and performed household chores sporadically. T. 72-75.

A supplemental hearing was held on October 10, 2007, following remand. T. 890-928. Plaintiff had begun working as a nurse again in June, 2000, and asked the ALJ to consider the closed period from January 2, 1996 through June 20, 2000. T. 894-96, 900-01. Plaintiff's disabling impairments, resulting in her inability to work, included chronic fatigue, fibromyalgia, thyroid disorder, migraine headaches, memory problems, and depression. T. 907-09, 916. She described excessive napping, inability to keep up with

housework, joint pain and muscle spasms, numbness in her face, and having to stay home and rest a lot during the relevant period. T. 915, 917, 919-924. Plaintiff reported no adverse side effects from her B-12 injections or medications, which included "a lot of Vicodin," an opioid painkiler. T. 920-21.

The ALJ heard testimony from VE Peter A. Manzi, Ph.D at a second supplemental hearing dated November 16, 2007. She posed a hypothetical involving an individual of Plaintiff's age with LPN experience, who could lift 20 pounds occasionally and 10 pounds frequently, could sit for 2 hours at a time, stand and/or walk for 6 hours in an 8-hour day, frequently balance, and occasionally climb stairs and ramps. The hypothetical individual would also have the following limitations: avoid climbing ladders, scaffolds, or working at unprotected heights; and avoid prolonged concentrated exposure to pollens and excessive dust, fumes, odors, and gases. T. 939. The ALJ also included moderate limitations in remembering, following, carrying out, and completing detailed or complex tasks, but with a general ability to maintain a regular work schedule. T. 941. The VE responded that such an individual could work as an assembler, cashier, cafeteria attendant, or collator operator. T. 941-42.

## IV. **The Decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.**

### A. **Severity of Impairment**

Plaintiff first contends that the ALJ erred in finding Plaintiff's cognitive disorder to be a non-severe impairment. Pl. Mem. (Dkt. #8-1) at 8-10.

For an impairment to be considered severe, it must more than minimally limit the claimant's functional abilities, and it must be more than a slight abnormality. 20 C.F.R. § 416.924(c). The "severity regulation" is intended only "to screen out de minimis claims.'" Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).

On this record there was simply no diagnosis of cognitive disorder. The only testing for such was conducted by consultative examiner Dr. Donofrio, who opined that Plaintiff "could have" a cognitive disorder. T. 199-204; 234-35. Based on this fact alone, Plaintiff has not submitted medical evidence of a diagnosis of a disorder as is her burden to do. See 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we

can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are disabled, its effect on your ability to work on a sustained basis.") (emphasis added). State Agency psychiatrist Dr. Chun reviewed the record in November, 1996, and opined that while Plaintiff had some deficiencies in concentration, persistence, or pace, they were moderate, not marked limitations. T. 153, 155-57.

Based on the evidence cited above and in the record as a whole, the ALJ's finding that Plaintiff's alleged cognitive disorder was not severe was supported by substantial evidence. Moreover, because the ALJ concluded that Plaintiff had established other impairments considered severe under the Act and continued with the sequential analysis, any arguable errors in the findings at step two of the analysis were harmless. Tryon v. Astrue, No. 0-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012).

**B.   RFC Finding**

Plaintiff next contends that the ALJ's RFC finding is unsupported by substantial evidence and that she did not apply the correct legal standards in evaluating the limitations resulting from Plaintiff's mental impairments. Pl. Mem. at 10-13.

An ALJ's evaluation of a claimant's mental impairments must reflect her application of the "special technique" set out in 20 C.F.R. § 404.1520a, which requires consideration of "four broad functional areas ... [a]ctivities of daily living; social

functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). The first three areas are rated on a five-point scale—"[n]one, mild, moderate, marked, and extreme." Id. at § 404.1520a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe.'" Kohler v. Astrue, 546 F.3d 260, 266 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1520a(d)(1)).

The ALJ applied the special technique described above and considered Plaintiff's functioning in the four broad areas, after which she summarized the evidence and found that Plaintiff had mild restrictions in activities of daily living and social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration. T. 233-35. She further found that Plaintiff was able to understand, remember, follow, and carry out and complete simple, repetitious tasks and maintain attention and concentration for such tasks; sustain an ordinary work routine without special supervision; make appropriate work-related decisions regarding simple, unskilled repetitive work; and perform work in close proximity to co-workers without being distracted by them or distracted them. T. 236. Plaintiff could respond appropriately to changes in an unskilled work setting and to typical work stress

related to unskilled repetitive work. She was, however, moderately limited in the ability to remember, follow, carry out, and complete detailed or complex tasks and in maintaining focus, attention, and concentration on detailed or complex tasks. She was also moderately limited, but generally able to satisfactorily maintain a regular work schedule. Id.

The ALJ based the mental portion of her RFC finding on Dr. Donofrio's examination findings, Dr. Chun's opinion of slight restrictions, Plaintiff's subjective complaints, and the fact that Plaintiff did not seek mental health treatment during the relevant period. T. 234, 238-39. The ALJ included Plaintiff's moderate limitations in her hypothetical posed to the VE in determining her RFC, thus properly considering the combined effect of all of claimant's impairments pursuant to 20 C.F.R. § 404.1523, in addition to employing the special analysis technique. T. 236, 244. See Tryon, supra.

Accordingly, the ALJ did apply the special analysis technique in determining whether Plaintiff's mental impairments were severe, and that her RFC finding is supported by substantial evidence.

### C.  Plaintiff's Credibility

Plaintiff contends that the ALJ did not use the appropriate standards set forth in 20 C.F.R. § 416.929, 404.1529, and Social Security Ruling ("SSR") 96-7p in assessing her credibility. Pl. Mem. 13-15. Specifically, she contends that the ALJ did not provide

a rationale in determining whether Plaintiff's credibility was undermined. Pl. Mem. 15.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); accord Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). When a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see SSR 96-7p, (July 2, 1996), 1996 WL 374186, at *7. Thus, it is well within the Commissioner's discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms

v. Sec'y, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

Plaintiff alleged disability based on Epstein-Barr, fibromyalgia, chronic fatigue, headaches, joint pain, high blood pressure, a hiatal hernia, periods of excessive sleep, and an inability to concentrate. T. 47-50, 55-58, 115-16. In making her finding, the ALJ considered Plaintiff's testimony, her subjective complaints concerning her disabling conditions, activities of daily living, medications, and other treatments. T. 236-42. The ALJ found Plaintiff's allegations concerning her symptoms were not all reasonably related to medically determinable impairments, and her statements regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible. T. 238.

Contrary to Plaintiff's contention, the ALJ provided a thorough analysis in support of her credibility finding. T. 236-42. The ALJ observed that Plaintiff did some shopping, performed housework, attended school functions, cared for her children (including an infant), went to church, socialized, cooked, and drove a car, despite her numerous ailments and complaints of debilitating fatigue. T. 236-37. The ALJ also pointed out several instances where Plaintiff appeared to have exaggerated her symptoms, such as her testimony stating that she would have to "crawl" up the stairs on bad days and her assertion of knee pain and multiple sclerosis, neither of which found any support in the

medical record. T. 237, 240. She further noted that some of Plaintiff's copious complaints could have been attributable to other sources, for example, heart palpitations and vomiting twice per day, while reporting that she drank four pots of coffee per day, and tiring easily during the time she was taking Tylenol-3 with codeine, an opiate analgesic. T. 239-40.

It is worth noting that the ALJ did not negate Plaintiff's subjective complaints entirely. She reduced Plaintiff's RFC to light work with several nonexertional limitations based on depression, and, giving Plaintiff the benefit of the doubt, determined myofascial pain as a severe impairment. T. 233, 235-36, 242.

In response to her attorney's argument that Plaintiff's work history served to enhance her credibility, the ALJ noted that there was "some evidence that Plaintiff was in legal trouble over some care she did or did not provide to a patient, so that it would be to [Plaintiff's] benefit to establish that a mistake was attributed to [Plaintiff's] mental disability rather than negligence." T. 242. The ALJ also pointed out, in detail, a summary of other relevant factors in the record in assessing Plaintiff's credibility.

Given that it is the responsibility of the Commissioner, not the reviewing Court, to assess a Plaintiff's credibility, the Court finds that the ALJ's credibility determination is supported by

substantial evidence in the record. See Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994) (reviewing court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.")

Accordingly, the Court finds that the ALJ's credibility determination is proper as a matter of law, and is supported by substantial evidence in the record.

**D.    Vocational Expert Testimony**

Plaintiff also avers that the testimony of the VE cannot provide substantial evidence to support her denial of disability benefits. Pl. Mem. 15-16.

At step five, the burden is on the Commissioner to prove that "there is other gainful work in the national economy which the claimant could perform." Balsamo v. Chater, 142 F.3d 75 (2d Cir. 1998). The ALJ properly may rely on an outside expert, but there must be "substantial record evidence to support the assumption upon which the vocational expert based his opinion." Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983). The ALJ is entitled to rely on the vocational expert's testimony that Plaintiff could perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1560(b)(2).

For the opinion of a VE to constitute substantial evidence, the hypothetical questions posed to the VE must include all of the

claimant's limitations that are supported by medical evidence in the record. See Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981) (a "vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job"); see also Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) ("A hypothetical question posed to a vocational expert must reflect all of a claimant's impairments....") (internal citations and quotation marks omitted).

Plaintiff argues that the opinion evidence of Dr. Chun commands a finding of disability. Pl. Reply. Mem. (Dkt. #14) 3-4. The Court finds this to be unsupported by the record.

Dr. Chun reviewed the record, which included the report of Dr. Donofrio, and opined that while Plaintiff would often have deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner, those deficiencies were considered moderate and not marked. T. 153, 155-57. She was not significantly limited in her ability to carry out very short and simple instructions, to sustain an ordinary routine without special supervision, to work in coordination with or in proximity to others without being distracted by them, and to make simple work related decisions. T. 155. Nor was she significantly limited in her ability to remember locations and work-like procedures or in her ability to understand and remember short and simple instructions.

T. 155, 157. Her ability to socially interact was not significantly limited. T. 157.  Contrary to Plaintiff's contention, Dr. Chun's opinion provides substantial evidence in support of the ALJ's finding that Plaintiff did not have a severe cognitive disorder, and that Plaintiff was able to perform basic work-related activities of unskilled, light work.

For the same reasons, the ALJ's hypothetical was based on an accurate RFC finding. Pl. Mem. 16.  Born in 1961, Plaintiff was considered to be a "younger person" as of the date of the ALJ's decision with a high school education and was able to communicate in English. T. 43, 243. After considering Plaintiff's vocational profile along with her RFC, she applied the corresponding Medical-Vocational Rule 202.20-202.22 and found Plaintiff not disabled. To determine the extent to which Plaintiff's nonexertional limitations (including the moderate limitations noted in Dr. Chun's report) eroded the unskilled light occupational base, the ALJ asked the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. T. 244, 939-41.  The VE testified that given all of these factors the hypothetical individual would be able to perform jobs in the national economy, including assembler, cashier, and collator operator. T. 244, 941-42. Because the hypothetical question posed to the VE was based on an RFC that accurately described Plaintiff's

limitations, the VE's testimony provides substantial evidence to support the ALJ's finding of no disability.

Accordingly, the Court finds that the ALJ's conclusion at Step 5 was supported by substantial evidence.

## **CONCLUSION**

The Court finds that the Commissioner's decision to deny SSI and DIB benefits for the alleged disability period from January 2, 1996 through June 20, 2000, was supported by substantial evidence in the record. Accordingly, Plaintiff's motion for judgment on the pleadings (Dkt. #11) is denied, and the Commissioner's cross-motion for judgment on the pleadings (Dkt. #14) is granted. The Complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                              S/Michael A. Telesca

                              _____
                              MICHAEL A. TELESCA
                              United States District Judge

Dated:    Rochester, New York
          September _9, 2014